| | |
|---|---|
| In re: Johnnie Miranda Donahue and Kenneth Elliot Donahue | Bankruptcy No.: 16-53422 |
| | R.S. No.: DJD-001 |
| | Hearing Date: 04/05/2017 |
| Debtor(s) | Time: 1:00 pm |

## Relief From Stay Cover Sheet

Instructions: Complete caption and Section A for all motions.  Complete Section B for mobile homes, motor vehicles, and personal property.  Complete Section C for real property.  Utilize Section C as necessary.  If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)    Date Petition Filed:  12/05/2016                Chapter:  13

Prior hearings on this obligation: _____    Last Day to File §523/§727 Complaints:  03/20/2017

(B)    Description of personal property collateral (e.g. 1983 Ford Taurus):

Secured Creditor [   ] or lessor [   ]

| | | | |
|---|---|---|---|
| Fair market value: | $_____ | Source of value:_____ | |
| Contract Balance: | $_____ | Pre-Petition Default: | $_____ |
| Monthly Payment: | $_____ | No. of months:_____ | |
| Insurance Advance: | $_____ | Post-Petition Default: | $_____ |
| | | No. of months:_____ | |

(C)    Description of real property collateral (e.g. Single family residence, Oakland, CA):  45 Vista Pointe Drive, Watsonville, CA  95076

Fair market value: $  534,000.00          Source of value:  Schedules          If appraisal, date:_____

Moving Party's position (first trust deed, second, abstract, etc.):  2nd DOT

| | | | |
|---|---|---|---|
| Approx. Bal. | $  233,329.85 | Pre-Petition Default: | $_____ |
| As of (date):  12/05/2016 | | No. of months:_____ | |
| Mo. payment: | $  2,166.32 | Post-Petition Default: | $  9,914.35 |
| Notice of Default (date):_____ | | No. of months:  4 | |
| Notice of Trustee's Sale:_____ | | Advances Senior Liens: | $_____ |

Specify name and status of other liens and encumbrances, if known (e.g. trust deeds, tax liens, etc.):

| Position | Amount | Mo. Payment | Defaults |
|---|---|---|---|
| 1st Trust Deed:  Nationstar Mortgage, | $  297,037.00 | $_____ | $_____ |
| 2nd Trust Deed:  Movant | $  233,329.85 | $  2,166.32 | $  10,775.35 |
| _____: | | | |
| _____: | | | |
| _____: | | | |
| (Total) | $  530,366.85 | $_____ | $_____ |

(D)    Other pertinent information:

/s/Darren J. Devlin

Signature

Dated:  March 14, 2017

Darren J. Devlin, Esq.

Print or Type Name

Attorney for  First Tennessee Bank National Association successor thru merger with First Horizon Home Loan Corporation

Case: 16-53422    Doc# 25    Filed: 03/14/17    Entered: 03/14/17 13:06:03    Page 1 of 24

Darren J. Devlin, Esq. [SBN 176261]
THE LAW OFFICES OF JASON C. TATMAN, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA 92121
Telephone: 760-512-1757
Facsimile: 760-230-5876
dd@nationwidereconveyance.com
Attorneys for Secured Creditor/Moving Party
First Tennessee Bank National Association
successor thru merger with First Horizon
Home Loan Corporation

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>JOHNNIE MIRANDA DONAHUE and KENNETH ELLIOT DONAHUE,<br><br>Debtors.<br>_____<br>First Tennessee Bank National Association successor thru merger with First Horizon Home Loan Corporation,<br><br>Movant,<br><br>-vs-<br><br>JOHNNIE MIRANDA DONAHUE and KENNETH ELLIOT DONAHUE, Debtors; Devin Derham-Burk, Chapter 13 Trustee,<br><br>Respondents. | Case No: 16-53422<br><br>Chapter 13<br><br>DC No.: DJD-001<br><br>**MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date: April 5, 2017<br>Time: 1:00 p.m.<br>Ctrm: 3020<br><br>*The courtroom of the Honorable M. Elaine Hammond* |

Secured Creditor and Moving Party First Tennessee Bank National Association successor thru merger with First Horizon Home Loan Corporation ("Creditor"), respectfully submits its Motion for Relief from Automatic Stay to enforce its lien upon the real property of Debtors Johnnie Miranda Donahue and Kenneth Elliot Donahue ("Debtors").

1

1.      On December 5, 2016, Debtors filed a voluntary Chapter 13 petition.

2.      Devin Derham-Burk is the duly qualified and acting Chapter 13 Trustee.

3.      On or about December 2, 2005, Debtors executed and delivered to First Horizon Home Loan Corporation ("First Horizon"), a written Home Equity Line of Credit Agreement ("Agreement"), for value received. The current monthly payment is $2,166.32.

4.      To secure repayment of the Agreement, on or about December 2, 2005, Debtors granted to First Horizon beneficial interest under a Deed of Trust ("Deed of Trust"). The Deed of Trust encumbers residential real property located at 45 Vista Pointe Drive, Watsonville, CA 95076 ("Property"). The Deed of Trust was recorded in the Official Records of Santa Cruz County, California.

5.      On December 10, 2016, Debtors defaulted under the terms of the Agreement by failing to make the monthly payment due on that date. Debtors have failed to make all consecutive monthly payments on the Agreement due thereafter to Creditor. Post-petition arrears now exist in the amount of $9,914.35 representing four (4) payments and attorneys' fees. An additional payment is due on April 12, 2017, in the amount of $2,166.32. Post-petition arrears are as follows:

| | |
|---|---|
| 12/10/16 payment | $2,761.08 |
| 1/9/17 payment | $2,820.63 |
| 2/9/17 payments | $2,166.32 |
| 3/12/17 payment | <u>$2,166.32</u> |
| Total Arrearages | $9,914.35 |

6.      The principal amount due and owing to Creditor on the Agreement as of December 5, 2016, is $233,329.85.

7.      The last payment made was October 3, 2016, which was applied to the payment due February, 2016, payment.

/ / /

/ / /

/ / /

/ / /

Case: 16-53422   Doc# 25   Filed: 03/14/17   Entered: 03/14/17 13:06:03   Page 3 of 24

WHEREFORE, Creditor prays that the automatic stay be modified as follows:

A. For an Order granting Creditor immediate relief from the automatic stay to take any and all actions, including, but not limited to, foreclosure and sale, to enforce its lien on the real property located at 45 Vista Pointe Drive, Watsonville, CA 95076;

B. That the requirements of Bankruptcy Rule 4001(a)(3), be waived; and

C. That Creditor have such other and further relief as the Court may deem just and proper.

Dated: March 14, 2017                    Respectfully submitted,


                                         /s/Darren J. Devlin_____
                                         Darren J. Devlin, Esq.
                                         Attorneys for First Tennessee Bank National
                                         Association successor thru merger with First
                                         Horizon Home Loan Corporation

3

Darren J. Devlin, Esq. [SBN 176261]
THE LAW OFFICES OF JASON C. TATMAN, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA 92121
Telephone: 760-512-1757
Facsimile: 760-230-5876
dd@nationwidereconveyance.com
Attorneys for Secured Creditor/Moving Party
First Tennessee Bank National Association
successor thru merger with First Horizon
Home Loan Corporation

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>JOHNNIE MIRANDA DONAHUE and KENNETH ELLIOT DONAHUE,<br><br>Debtors.<br>——————————————————<br>First Tennessee Bank National Association successor thru merger with First Horizon Home Loan Corporation,<br><br>Movant,<br><br>-vs-<br><br>JOHNNIE MIRANDA DONAHUE and KENNETH ELLIOT DONAHUE, Debtors; Devin Derham-Burk, Chapter 13 Trustee,<br><br>Respondents. | Case No: 16-53422<br><br>Chapter 13<br><br>DC No.: DJD-001<br><br>**DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date: April 5, 2017<br>Time: 1:00 p.m.<br>Ctrm: 3020<br><br>*The courtroom of the Honorable M. Elaine Hammond* |

I, Amy McKamey, declare as follows:

1.     I am employed as a Vice President by First Tennessee Bank National Association successor thru merger with First Horizon Home Loan Corporation ("Creditor"). In that capacity, I bear primary responsibility for protecting Creditor's ownership interest in the subject property during any bankruptcy proceedings which involve the property and subject loan

1

account of Debtors Johnnie Miranda Donahue and Kenneth Elliot Donahue ("Debtors").

2. I have custody and control of Creditor's business records and documents relating to its loan to Debtors. These records were prepared in the regular course of Creditor's business at or near the time of the act, condition, or event to which they relate. Such records were prepared in the ordinary course of business by Creditor by a person employed by Creditor who has personal knowledge of the event being recorded and who has a business duty to Creditor to make a record of such event.

3. On December 5, 2016, Debtors filed a voluntary Chapter 13 petition.

4. Devin Derham-Burk is the duly qualified and acting Chapter 13 Trustee.

5. On or about December 2, 2005, Debtors executed and delivered to First Horizon Home Loan Corporation ("First Horizon"), a written Home Equity Line of Credit Agreement ("Agreement"), for value received. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and is incorporated herein by this reference. The current monthly payment is $2,166.32.

6. To secure repayment of the Agreement, on or about December 2, 2005, Debtors granted to First Horizon beneficial interest under a Deed of Trust ("Deed of Trust"). The Deed of Trust encumbers residential real property located at 45 Vista Pointe Drive, Watsonville, CA 95076 ("Property"). The Deed of Trust was recorded in the Official Records of Santa Cruz County, California. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B" and is incorporated herein by this reference.

7. On December 10, 2016, Debtors defaulted under the terms of the Agreement by failing to make the monthly payment due on that date. Debtors have failed to make all consecutive monthly payments on the Agreement due thereafter to Creditor. Post-petition arrears now exist in the amount of $9,914.35 representing four (4) payments and attorneys' fees. An additional payment is due on April 12, 2017, in the amount of $2,166.32. Post-petition arrears are as follows:

/ / /

/ / /

/ / /

2

| | |
|---|---|
| 12/10/16 payment | $2,761.08 |
| 1/9/17 payment | $2,820.63 |
| 2/9/17 payment | $2,166.32 |
| 3/12/17 payment | $2,166.32 |
| Total Arrearages | $9,914.35 |

8.      The principal amount due and owing to Creditor on the Agreement as of December 5, 2016, is $233,329.85.

9.      The last payment made was October 3, 2016, which was applied to the payment due February, 2016, payment.

I have personal knowledge of the foregoing facts and if called upon as a witness I could and would competently testify thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and as to those matters testified to on information and belief, I believe them to be true.

Executed this 13th day of March, 2017, at Knoxville, TN.

Amy McLamey

3

Darren J. Devlin, Esq. [SBN 176261]
THE LAW OFFICES OF JASON C. TATMAN, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA 92121
Telephone: 760-512-1757
Facsimile: 760-230-5876
dd@nationwidereconveyance.com
Attorneys for Secured Creditor/Moving Party
First Tennessee Bank National Association
successor thru merger with First Horizon
Home Loan Corporation

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>JOHNNIE MIRANDA DONAHUE and KENNETH ELLIOT DONAHUE,<br><br>Debtors.<br>_____<br>First Tennessee Bank National Association successor thru merger with First Horizon Home Loan Corporation,<br><br>Movant,<br><br>-vs-<br><br>JOHNNIE MIRANDA DONAHUE and KENNETH ELLIOT DONAHUE, Debtors; Devin Derham-Burk, Chapter 13 Trustee,<br><br>Respondents. | Case No: 16-53422<br><br>Chapter 13<br><br>DC No.: DJD-001<br><br>**EXHIBITS 1-2 IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date: April 5, 2017<br>Time: 1:00 p.m.<br>Ctrm: 3020<br><br>*The courtroom of the Honorable M. Elaine Hammond* |

Exhibit No. 1—Home Equity Line of Credit Agreement, pgs 2-6; and

Exhibit No. 2—Deed of Trust, pgs 7-15;

1

## MULTISTATE HOME EQUITY LINE OF CREDIT AGREEMENT
## AND DISCLOSURES UNDER THE FEDERAL TRUTH-IN-LENDING ACT

THIS AGREEMENT, entered into on the **2nd** day of **December, 2005** , (the "Effective Date") is a binding contract between the parties signing below. The Agreement contains your promissory note and also the disclosures required by the Federal Truth-in-Lending Act. Please read all of it and keep it with your permanent records. In this Agreement, the words we, us, our and Lender mean **FIRST HORIZON HOME LOAN CORPORATION** ,
a **KANSAS corporation** . The words you, your, and Borrower mean the Borrower or Borrowers who have signed this Agreement, jointly and severally. The words card or credit card mean VISA Card. Provisions relating to credit cards apply only if credit cards are issued on your Account.

1. **Term.** The "Term" of this Agreement commences on the Effective Date and consists of two consecutive periods, the "Draw Period" and the "Repayment Period." The length of each period shall be as designated in Paragraph 11. The Draw Period begins on the Effective Date; the Repayment Period begins the day after the Draw Period ends.

2. **Credit Line and Advances.** Subject to the terms and conditions of this Agreement, which you promise to follow, we are committed during the Draw Period to make loans to you and allow you to write checks ("Check Advances"), make credit card purchases ("Credit Card Advances") and obtain cash advances ("Cash Advances"), (cumulatively referred to as "Advances"), and access the line of credit account (your "Credit Line" or "Account") by credit (debit) card, check, wire transfer or telephone, subject to your credit limit stated in Paragraph 11 (your "Credit Limit"). Advances are obtained by accessing your Credit Line through one of these methods. For Credit Card Advances, your merchant will prepare a sales draft or retail charge agreement. We may buy or accept assignments of these drafts and agreements, and we may make Cash Advances directly to you or permit you to obtain Cash Advances through FIRST TENNESSEE or other automated teller machines approved by us. You promise that the total balance of Advances will not exceed your Credit Limit. If we approve or permit any transaction(s) in excess of your Credit Limit, you agree to pay such excess on demand.

3. **No Advances During Repayment Period.** You will not obtain Advances during the Repayment Period. We may dishonor any credit card transaction, check or other request for Advances presented to us after the Draw Period; however, we may honor such transactions in our discretion if they appear to us to have been made during the Draw Period.

4. **Promise to Pay.** You promise (jointly and severally, if more than one Borrower has signed this Agreement) to pay to us the total amount of all Advances, all FINANCE CHARGES, fees and other charges you owe, whether such Advances are made to you or to anyone allowed to use your Account. Payment must be sent to us at the address included in your monthly billing statement.

5. **Prepayment.** You can prepay your Advances in whole or in part at any time without penalty. However, unless waived in writing we will impose a fee if you close your Account within 2 years of the Effective Date of this Agreement. Refer to Section 20 for additional information on Early Termination.

6. **Bills.** We will send you a billing statement ("Bill") each month reflecting Advances posted to your Account. We will also do this if there is a balance due us or if there is a credit balance due you of more than $1.00. Sales slips and checks are retained by us.

7. **Payments.** You must make the minimum payment shown on your Bill ("Minimum Payment Due") within 30 days of the cycle closing date shown on your Bill. During the Draw Period, the Minimum Payment Due will be the sum of: (a) all FINANCE CHARGES that have accrued since your last Bill; (b) the Annual Fee, Late Fee, Returned Check Fee or Overlimit Fee, if any, imposed during that month; and (c) all past due payments. Making only the Minimum Payment Due during the Draw Period will not repay any of the principal. During the Repayment Period, the Minimum Payment Due will be the sum of (a) through (c) above, plus an amount to be computed by adding your "average daily balance subject to FINANCE CHARGE" on Credit Card Advances to that for Cash Advances and Check Advances and dividing the sum by the number of months remaining in the Repayment Period, unless the resulting amount is less than $50.00, in which case the Minimum Payment Due shall be full payment. Payments are applied in the order described in Paragraph 15. All of your indebtedness under this Agreement remaining at the end of the Term is immediately due and payable.

8. **FINANCE CHARGE on Credit Card Advances.** (a) If you pay your new balance in full within 30 days of the cycle closing date shown on your Bill, we will not impose any FINANCE CHARGE on the Credit Card Advances.

(b) If you do not pay your new balance in full within 30 days of the cycle closing date, we will impose a FINANCE CHARGE on the Credit Card Advances, determined by multiplying your "average daily balance subject to FINANCE CHARGE" on Credit Card Advances by the periodic rate that applies to Credit Card Advances. The result is your FINANCE CHARGE on Credit Card Advances for that period.

(c) Your "average daily balance subject to FINANCE CHARGE" will be computed as follows: (1) subtract any unpaid FINANCE CHARGE on Credit Card Advances from the balance on your Credit Card Advances at the beginning of each new billing cycle; (2) subtract payments and credits on the day they are posted to your Account from the previous day's ending balance and add Credit Card Advances on the day they are posted to your Account to the previous day's ending balance. The result is your daily credit card balance subject to FINANCE CHARGE; and (3) add these daily balances and divide the total by the number of days in the billing cycle. The result is your "average daily balance subject to FINANCE CHARGE" for Credit Card Advances.

9. **FINANCE CHARGES on Cash Advances and Check Advances.** (a) You are obligated to pay a FINANCE CHARGE on all Cash and Check Advances from the day advanced to the day full payment is posted to your Account.

(b) We will compute your FINANCE CHARGE on Cash and Check Advances in the following manner: (1) subtract any unpaid FINANCE CHARGE from the previous balance of your Cash and Check Advances at the beginning of each new billing cycle on these amounts; (2) subtract payments and credits from the previous day's ending balances and add new Cash and Check Advances to the previous day's ending balance to determine the balance of your Cash and Check Advances for each day of the monthly billing period. The result is your daily balance subject to FINANCE CHARGE; (3) at the end of the billing cycle, add these daily balances and divide the total by the number of days in the billing cycle. The result is your "average daily balance subject to FINANCE CHARGE for Cash and Check Advances"; and (4) finally we multiply this average daily balance by the periodic rate. The result is your FINANCE CHARGE on Cash and Check Advances for the billing period.

10. **Rates.** (a) Your ANNUAL PERCENTAGE RATE and monthly periodic rate will be variable interest rates which can change monthly and will increase if the Prime Rate (defined below) increases. If a FINANCE CHARGE is imposed on your Account, an increase in your monthly periodic rate and corresponding **ANNUAL PERCENTAGE RATE** will result in an increase in your FINANCE CHARGE and most likely an increase in your Minimum Payment Due. Your **ANNUAL PERCENTAGE RATE** does not include costs other than interest; it will never exceed the lesser of 21% per annum or the maximum we are permitted to charge by law.

Initials _____  Initials _____  Initials _____  Initials _____

Case: 16-53422    Doc# 25    Filed: 03/14/17    Entered: 03/14/17 13:06:03    Page 9 of 24

(b) Your **ANNUAL PERCENTAGE RATE** for each monthly billing cycle will be a variable rate equal to the Prime Rate (defined below) on the Determination Date (defined below) plus the Rate Differential (Margin) specified below. Both Prime Rate and Rate Differential are expressed as annual rates of interest. Your monthly periodic rate will be determined by dividing the **ANNUAL PERCENTAGE RATE** by twelve. "Prime Rate" means that rate published in the Money Rates Section of *The Wall Street Journal*, on the Determination Date. If more than one Prime Rate is published, the highest will apply. "Determination Date" means the date on which your billing cycle closes (or the proceeding publication date if *The Wall Street Journal* is not published on the date which your billing cycle closes.) The Prime Rate in effect on the Determination Date will be effective from the first day of that same billing cycle. Your current **ANNUAL PERCENTAGE RATE** is     6.750 %.* Your current monthly periodic rate is     0.562 %.* Your Rate Differential (Margin above Prime) is    (0.250) %.* *These rates are estimates based on the Prime Rate of    7.000 % reported in *The Wall Street Journal* on      11/02/2005      , which may not be the Prime Rate published on the first Determination Date for your Account.

11. **Specific Information.** Credit Limit $   234,000.00  ; Draw Period  10  Years; Repayment Period  10  Years.

12. **Fees and Charges.** In consideration of your ability to obtain Advances under the Credit Line established by this Agreement, your continued participation in the plan, and our commitment to allow Advances under said Agreement, you agree to pay an Annual Fee of    **Waived for life of loan**       for each year during the Draw Period. The initial Annual Fee will be added to your first Bill. Subsequent Annual Fees will be added to your Bill on each anniversary of the date of this Agreement. If your Minimum Payment Due is not received within 15 days after the payment date shown on your Bill, we will charge your Account a Late Fee of the greater of $5.00 or 5.00% of the Minimum Payment Due, not to exceed $50.00. However, you will not be required to pay a Late Fee more than once on the same late amount even if that amount remains past due for more than one billing period. You agree not to obtain Advances from the time a Late Fee is imposed until you bring your Account current by paying the delinquent Minimum Payment. An Overlimit Fee of $15.00 will be charged for each Purchase, Cash Advance or Loan on your Account if the resulting account balance is over your Credit Limit. A Returned Check Fee of $20.00 will be charged each time a check you give us as payment on your Account is returned unpaid or is not honored by the drawee bank. If you terminate this Account within 2 years of the Effective Date, you must pay an Early Termination Fee of    **Waived for life of loan**           . Refer to Paragraph 20 of this Agreement for additional information on termination by Borrower. On signing this Agreement, you also owe the following one- time fees and charges which will be added to your Bill as Advances unless you pay those fees when you sign this Agreement. You acknowledge all fees and charges required by this Agreement, including all FINANCE CHARGES, as set forth below and in any Settlement Statement (form HUD-1 or HUD-1A) included in your closing documents, which provides the final and complete itemized list of settlement charges to be fair and reasonable. The Settlement Statement is incorporated by reference into the Agreement.

| FINANCE CHARGES | Amount | Closing Costs | Amount |
|---|---|---|---|
| Commitment/ Discount | 0.00 | Notary | 0.00 |
| Origination Fee | 0.00 | Appraisal/Valuation | 0.00 |
| Flood Certification | 0.00 | Credit Report | 0.00 |
| Processing Fee | 0.00 | Pest Inspection | 0.00 |
| Administrative Fee | 0.00 | Title Examination | 0.00 |
| Underwriting Fee | 0.00 | Title Search/Abstract | 0.00 |
| Attorney Fee | 0.00 | Title Insurance | 0.00 |
| Settlement Fee or Closing Agent Fee | 0.00 | Lender's Coverage | 0.00 |
| Tax Service Fee | 0.00 | Owner's Coverage | 0.00 |
| Courier Fee | 0.00 | Recording Fee | 0.00 |
| Title Co. Courier Fee | 0.00 | City/ County Tax/ Stamps | 0.00 |
| Wire Fee | 0.00 | State Tax Stamps | 0.00 |
| E-Mail Loan Document Fee | 0.00 | Survey | 0.00 |
| Rush Service Fee | 0.00 | Title Insurance Binder | 0.00 |
| Fax Fee | 0.00 | Document Preparation Fee | 0.00 |
| NOT APPLICABLE | 0.00 | | |
| NOT APPLICABLE | 0.00 | | |

Your cost of credit may be reduced by Lender, broker or other credits. When available, credits are used to offset finance charges and, to the extent of any remaining credit, to offset closing costs. Fees that have been fully offset by credits are not itemized in your disclosures.

13. **Security.** All Advances made up to the Credit Limit, FINANCE CHARGES, fees and other charges, and all collection expenses, and expenses incurred to protect the value of the residential real property pledged as security for the debt ("Collateral") are secured by a deed of trust, deed to secure debt or mortgage, (hereinafter referred to as "Collateral Documents") dated **December 2nd, 2005**        , on real estate in the County/City of  Santa Cruz                            , State of  California                   (the description of such real estate as contained in said Collateral Documents being incorporated herein by reference); other collateral or property securing other Advances with us may also secure the indebtedness under this Agreement. You could lose your home if you do not meet the obligations in your Agreement with us.

14. **Receipt of Copy.** You acknowledge that you have read, understood and received a copy of this Agreement. You understand that each Borrower who signs the Agreement will be fully responsible for payment of the total amount due. You also acknowledge receipt at the time of your application of a Home Equity Disclosure Statement for this Account and a separate Home Equity Brochure.

15. **How We Apply Your Payments.** We will apply your payments in this order: (a) FINANCE CHARGES, (b) Annual Fee or Late Fee, Returned Check Fee or Overlimit Fee, if any; (c) unpaid amounts from prior Bills; (d) amounts due on current Bill; and (e) Advances posted, but not yet billed.

16. **Insurance.** You promise to maintain insurance on Collateral, as set forth in the Collateral Documents. You must purchase such insurance from a licensed insurer (if such a license is required by applicable law), and furnish proof satisfactory to us of such insurance. You may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove your choice, which will not be exercised unreasonably.

Initials        Initials        Initials        Initials

MultiState FHHLC/RETL (except CT, NY, TX, and WV)
Rev. 06-15-05

2 of 5

17. **Acceleration by Lender.** At our option, your entire indebtedness under this Agreement, together with FINANCE CHARGES and any other fees and charges you owe, will become immediately due and payable, and our commitment to make further Advances will terminate, without notice or demand to you, if any of the following events occurs: (a) you fail to make any payment as required by this Agreement; (b) you commit or have committed fraud, or if you make or have made a material misrepresentation, in any way connected with this Agreement; or (c) any action or inaction by you adversely affects the Collateral or any right or interest of ours in the Collateral, including but not limited to the sale, transfer, encumbrance or impairment of the Collateral or any right or interest of ours in the Collateral, or the failure to maintain satisfactory insurance.

18. **Other Limitations on Credit by Lender.** We will mail or deliver to you written notice of any action authorized by this paragraph, as required by applicable law. The notice will contain the specific reason(s) for such action. At our option, we may (a) reduce your Credit Limit (including to the extent permitted by law a reduction of the Credit Limit below the then existing level of indebtedness), (b) suspend or reduce our commitment to make Advances, or (c) take any or all such actions, for any period in which any of the conditions stated below shall occur:

(1) The value of the Collateral declines such that the initial difference between the Credit Limit and available equity (based on the Collateral's appraised value on application for the Credit Line) is reduced by 50% or more, or the value of the Collateral otherwise declines significantly (the value determined by an appraiser of our choice, if obtained, shall be conclusive);

(2) We reasonably believe that you will be unable to fulfill any of your payment obligations under this Agreement because of a material change in your financial circumstances caused or evidenced by the following: death, physical or mental incapacity, loss of employment, significant reduction in income or net worth, insolvency, failure to pay other debts, the filing of a petition in bankruptcy by or against you, or your representation that you will be unable to fulfill any payment obligation;

(3) You are in default of a material obligation under this Agreement or the Collateral Documents, including, but not limited to your obligation to make required payments, to provide true and complete financial information on request, to act so as not to adversely affect the Collateral or any right of ours in it, to occupy the Property as principal residence or to keep other material obligations and promises whether or not the breach of the same might not be a basis for acceleration;

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement;

(5) Our rights in the Collateral are adversely affected by government action;

(6) We are notified by a regulatory agency that continued extension of credit constitutes an unsafe and unsound practice;

(7) The maximum ANNUAL PERCENTAGE RATE is reached, but such event shall not in itself permit the reduction of the Credit Limit to a level below the outstanding balance of indebtedness; and

(8) Any Borrower requests a reduction of the Credit Limit or any limitation upon the right to obtain Advances.

19. **Reinstatement of Credit.** Upon cessation of conditions giving rise to limitations on credit imposed under Paragraph 18, we will be obligated to reinstate your former Credit Limit or our commitment regarding Advances only if all the following conditions are met: (a) the priority of our security interest in the Collateral for further extensions of credit has not be lowered; (b) you initiate and submit an application in writing for reinstatement; (c) you furnish all relevant information we may request in connection with your application; and (d) you pay, to the extent permitted by applicable law, our reasonable costs of any appraisal or credit report obtained to determine that the condition causing our action no longer exists. Furthermore, we are obligated to reinstate your Credit Limit only if you will not acquire a right of rescission as a result. If limitations were imposed at your request, credit privileges need not be reinstated unless all Borrowers request reinstatement.

20. **Termination by Borrower.** Any provision in this Agreement to the contrary notwithstanding, any Borrower may terminate this Credit Line by (a) giving us written notice of termination; (b) destroying or returning to us all checks and other devices issued or used in connection with the Credit Line, and (c) paying the Account in full. On and after the date on which we receive (a), (b), and (c) above, we shall not be obligated to any Borrower to make further Advances. But if any Borrower obtains Advances after such date, that Borrower and all other Borrowers will remain jointly and severally liable for those transactions, including any FINANCE CHARGES that may accrue on such Advances. Unless waived in writing, you must pay an Early Termination Fee of $200.00 if you close your account and terminate this Agreement within 2 years following the Effective Date. You acknowledge that we : (i) have entered into this Agreement with the expectation that it would not be terminated within the initial 2 years following the Effective Date, (ii) would not otherwise have been willing to enter into this Agreement on the terms herein for less than 2 years, and (iii) would not otherwise have incurred expenses and obligations had we known that you would terminate this Agreement within 2 years. You acknowledge that we could suffer loss and additional expenses which are difficult or impractical to ascertain as a result of termination within 2 years. The Early Termination Fee is a good faith resolution by you and us of the expense we may incur as a result of early termination. It is not intended as a penalty but as a good faith estimate of such expense.

21. **Financial Statements and Appraisals.** If during the Term of this Agreement we elect to request a current personal financial statement, you agree to provide the requested information in a form satisfactory to us within 10 days of such a request. You agree that we may have the Collateral appraised at any reasonable time we choose during the Term of this Agreement.

22. **Collection Costs.** If we employ an attorney to collect any amounts due under this Agreement or to protect the Collateral, you promise to pay all costs of litigation and collection, including all costs of repossessing and selling the Collateral and reasonable attorney's fees, as permitted by law.

23. **Returns and Refunds.** Cash refunds are not allowed for the returned Credit Card Advances made on your Account. Instead you will receive a credit to your Account for the amount of the return after we receive the credit from the seller. This credit will be filled out by the seller of the goods and services who will give you a copy. It is the seller's responsibility to mail or deliver the credit to us so we can credit your Account. We are not responsible for the seller's failure to mail or deliver the credit promptly.

24. **Releases or Delays in Enforcement.** If we choose, we may, without notice, (a) delay enforcing any of our rights under this Agreement or under the Collateral Documents, (b) extend the time allowed for making payments as many times as we choose, for any length of time, (c) waive or reduce any fees or charges and waive or reduce the interest rate or amount of the FINANCE CHARGE, (d) release all or any part of the Collateral, (e) accept instruments marked "paid in full" without discharging the maker or endorser beyond the amount of the instrument, (f) release any person who may be liable for the indebtedness under this Agreement, or (g) permit substitution of Collateral. Our action or inaction will not release or discharge you or our lien on the Collateral except to the extent that any such written release given by us expressly so states.

25. **Lost or Stolen Cards.** If your card is lost or stolen, you promise to notify VISA Traveler Service Center at once. In the Continental U.S., call 800-VISA911, and outside the Continental U.S. call 1-800-847-2911.

26. **Assignment.** We have the right to assign any amount you owe and also assign and transfer our rights under this Agreement.

27. **Amendment.** We reserve the right to change the terms of this Agreement, as permitted by law, including, but not limited to, changes in the index and Margin used to compute interest if the index described in Paragraph 10 of this Agreement is no longer available, changes to which you agree in writing, changes which will benefit you, and insignificant changes.

_____ _____ _____ _____
Initials Initials Initials Initials

MultiState FHHLC/RETL (except CT, NY, TX, and WV)
Rev. 06-15-05

3 of 5

28. **Notices.** (a) Any notice or demand from us about your Account will be mailed to you at your address appearing in our records, and any such notice will be effective when mailed. Notice to one Borrower will be notice to all. Any notice to us, other than to make payment or correct a billing error, must be mailed to P.O. Box 13., Memphis, TN 38101, and will be effective upon the expiration of one business day following receipt by us at that address. Payment and billing error addresses will be included in your Bill.

(b) We are entitled to act upon any notice from any Borrower which does not conform to all of the requirements set forth in this Agreement, but we are not obligated to act upon a notice which does not substantially conform to such requirements. If we act upon any non-conforming notice, we shall not therefore be liable to any Borrower.

29. **Invalidity.** If any portion of this Agreement is declared invalid or unenforceable, the remainder will not be affected and will remain in full force and effect. If a portion is unenforceable under a particular set of circumstances, it shall not be unenforceable under all circumstances, it being intended that the Agreement is given its broadest possible effect.

30. **Applicable Law.** This Agreement will be governed by applicable Federal law and the law of Tennessee. However, the Security Instrument will be governed by the law of state in which the real property is located, unless this law is preempted by Federal law. Federal law authorizes a national bank (such as Lender) to charge interest rates and fees permitted by the law of the state in which such a bank is located (in the Lender's case Tennessee), regardless of the location of the borrower or the property. Other Federal law may preempt various aspects of the law of the state in which the Lender is located, as well as the law of the state in which the borrower or the property is located.

31. **Tax Implications.** We have no responsibility for the tax effect of this Agreement or the impact upon your taxes of any payments made. You should consult a tax advisor regarding the deductibility of interest, fees and charges under this Agreement.

32. **Maryland Recordation Tax.** If the real property securing this Agreement is located in Maryland, you may, at your option, pay the recordation tax on your entire Credit Limit at closing, or you may pay the required tax on the amount of each advance at the time you obtain each advance. If you pay the recordation taxes on your entire Credit Limit at closing, your tax liability will be satisfied, regardless of the amount of debt you may actually incur. If, instead, you elect to pay the required tax as you obtain Advances, you will have seven days after obtaining each Advance to file with the clerk of the court where our Deed of Trust is recorded a verified statement of the amount of additional debt incurred. You will be responsible for paying to the clerk the applicable recordation tax on that additional debt and any filing fee. If you fail to do so, you may be penalized as provided in Section 14-1012 of the Tax-Property Article of the Maryland Code. That section provides for penalties of a fine up to $500 or up to six months imprisonment.

33. **Entire Agreement.** This Agreement and the Collateral Documents set forth the terms of the legal obligation between you and us, and represent the entire understanding between you and us concerning the subject matter of this Agreement.

## YOUR BILLING RIGHTS
## KEEP THIS NOTICE FOR FUTURE USE.

### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

If you think your Bill is wrong, or if you need more information about a transaction on your Bill, write to us on a separate sheet at the address shown on your Bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first Bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information describe the item you are not sure about.

If you have authorized us to pay your Bill automatically from your savings or checking Account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us 3 business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the Bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply an unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your Bill that are not in question.

If we find that we made a mistake on your Bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your Bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50.00 of the questioned amount, even if your Bill is correct.

Initials _____   Initials _____   Initials _____   Initials _____

## SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of the property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(i) You must have made the purchase in your home state, or, if not within your home state, within 100 miles of your current mailing address; and

(ii) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Executed the day first written above.

Borrower's Signature _____
KENNETH GILBERT DONAHUE

Borrower's Signature _____

Borrower's Signature _____

Borrower's Signature _____

By signing above, each of the Borrower(s) acknowledge receipt of a complete copy of this Agreement on the Effective Date.

Recorded | REC FEE        56.28
Official Records |
County of |
Santa Cruz |
GARY E. HAZELTON |
Recorder |
| JEB
08:00AM 28-Dec-2005 | Page 1 of 10

This instrument was prepared by:

**FIRST HORIZON HOME LOAN CORPORATION**
**2160 41ST AVENUE, SUITE 101**
**CAPITOLA, CA 95010**

After Recording return to:

**FHHLC - POST CLOSING MAIL ROOM**

**1555 W. WALNUT HILL LN. #200 MC 6712**
**IRVING, TX 75038**

UCC No. _____

## CALIFORNIA
## OPEN-END DEED OF TRUST
### (Securing Future Advance)

### THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST
### DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME

**ATTENTION COUNTY CLERK—THIS INSTRUMENT COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE MORTGAGES ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS INSTRUMENT SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A MORTGAGE BUT ALSO AS A FINANCING STATEMENT COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESS OF THE TRUSTOR ("BORROWER") AND BENEFICIARY ("LENDER") ARE SET FORTH IN THIS INSTRUMENT.**

FUTURE ADVANCES: We and you, as these terms are defined below, and the following additional parties
N/A

have agreed that we may make advances and readvances secured by this Deed of Trust from time to time at your request and the request of other parties, if any, identified above.

RIGHTS AND OBLIGATIONS OF THE BORROWER: Pursuant to this Deed of Trust and the Home Equity Line of Credit Agreement and Disclosures under the Federal Truth-in-Lending Act dated the same date as this Deed of Trust (the "Agreement") and secured by it, you have a right to obtain advances from time to time to be secured by the Property described below. This right to obtain advances may be terminated as described in the Agreement. You have certain duties under the Agreement and this Deed of Trust, which include the obligation to make timely monthly payments, to perform all of your obligations under any lien that has priority over this Deed of Trust, to keep the Property insured and free of subsequent liens that may obtain priority over this Deed of Trust, to preserve and maintain the Property, and not to transfer the Property or an interest in it without our prior written consent.

CONSEQUENCES OF DEFAULT: If you default as defined in the Agreement, we will have certain rights as set forth in this Deed of Trust to protect all amounts due us under the Agreement and this Deed of Trust. If such amounts are not paid,

CA HELOC FHHLC 02-02                Page 1 of 8

we may foreclose this Deed of Trust and sell the Property. In addition, if you fail to perform any other obligation under this Deed of Trust or the Agreement, we may (i) suspend your right to obtain further cash advances under the Agreement or (ii) reduce your credit limit.

**THIS DEED OF TRUST** is made on this   2nd               day of     **December, 2005**

The grantor is
**KENNETH ELLIOT DONAHUE & JOHNNIE MIRANDA DONAHUE, Husband & Wife As Community Property**
with Right of Survivorship
whose address is:
**45 VISTA POINTE DRIVE, WATSONVILLE CA, 95076**
The trustee is   **Terry Renoux,**
**1755 Lynnfield, Memphis, TN 38119**                                                        ("Trustee").
If more than one Trustee is named, any Trustee acting alone has the rights and authority conferred upon the Trustee in this Deed of Trust. The beneficiary is
**FIRST HORIZON HOME LOAN CORPORATION**
whose address is
**4000 Horizon Way, Irving, Texas 75063**
In this Deed of Trust, the terms "you," "your" and "yours" refer to the grantor(s). The terms "we," "us" and "our" refer to First Tennessee Bank National Association and its successors and assigns.

Pursuant to the Agreement, you may incur indebtedness in amounts fluctuating from time to time up to the maximum aggregate principal amount of   **TWO HUNDRED THIRTY FOUR THOUSAND &**
**00/100**                                              Dollars (U.S. $       **234,000.00** ).
The Agreement provides for the full debt to be paid in full no later than   **JANUARY 1, 2026**
You agree that this Deed of Trust shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced to you whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement.

This Deed of Trust secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under paragraph 7 of this Deed of Trust to protect the security of this Deed of Trust; and (c) the performance of your covenants and agreements under this Deed of Trust and the Agreement. For this purpose and in consideration of the debt, you irrevocably grant and convey to the Trustee, in trust, with power of sale, the property located in California, to wit:

**All that tract or parcel of land as shown on Schedule "A" attached**
**hereto which is incorporated herein and made a part hereof.**

Which property has the address of:
**45 VISTA POINTE DRIVE, WATSONVILLE, California 95076**                                      "Property Address".

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Deed of Trust. All of the foregoing is referred to in this Deed of Trust as the "Property."

YOU COVENANT that you are lawfully seised of the estate hereby conveyed and have the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal and interest owing under the Agreement and all other charges due under the Agreement.

2. **Payments of Taxes and Insurance.** You will pay, when due, all taxes, assessments, leasehold payments or ground rents (if any), and premiums for hazard insurance on the Property and mortgage insurance (if any). If you fail to pay, when due, your taxes, assessments, leasehold payments or ground rents (if any), and/or premiums for hazard insurance, we may, upon notice to you, require you to establish and maintain with us an escrow account for the purpose of paying such taxes, assessments, leasehold payments or ground rents, and/or premiums for hazard insurance.

3. **Application of Payments.** We will apply your payments in this order: (a) FINANCE CHARGES; (b) Annual Fee, Late Fee, Over-limit Fee, Lost Card Fee or Returned Check Fee, if any; (c) unpaid amounts from prior Bills; (d) amount due on current bill; and (e) Advances posted, but not yet billed.

4. **Prior Deeds of Trust; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Deed of Trust, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust or any advance under this Deed of Trust, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly.

   You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Deed of Trust or any advance to be made under the Agreement or this Deed of Trust.

5. **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose the insurer.

   Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

   Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Deed of Trust, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when notice is given.

   Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the property prior to the acquisition shall pass to us to the extent of the sums secured by this Deed of Trust

Case: 16-53422    Doc# 25    Filed: 03/14/17    Entered: 03/14/17 13:06:03    Page 16 of 24

immediately prior to the acquisition.

6. **Preservation and Maintenance of Property; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. If this Deed of Trust is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

7. **Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Deed of Trust, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce the laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Deed of Trust or any advance under the Agreement or this Deed of Trust, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Deed of Trust and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Deed of Trust. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request.

If we require mortgage insurance as a condition of making the loan secured by this Deed of Trust, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

8. **Inspection.** We may inspect the Property at any reasonable time.

9. **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us.

10. **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Deed of Trust granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Deed of Trust shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Deed of Trust but does not execute the Agreement: (a) is co-signing this Deed of Trust only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Deed of Trust; and (c) agrees that we and anyone else who signs this Deed of Trust may agree to extend, modify, forbear or make any accommodations regarding the terms of this Deed of Trust or the Agreement without such person's consent.

12. **Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

13. **Notices.** Unless otherwise required by law, any notice to you provided for in this Deed of Trust shall be delivered or mailed by first class mail to the Property Address or any other address you designate by written notice to us.

Case: 16-53422    Doc# 25    Filed: 03/14/17    Entered: 03/14/17 13:06:03    Page 17 of 24

14. **Governing Law; Severability.** This Deed of Trust shall be governed by federal law and, except as preempted by federal law, by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of the Deed of Trust or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Agreement are declared to be severable.

15. **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Deed of Trust.

16. **Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Deed of Trust) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Deed of Trust. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

17. **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance is affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Deed of Trust, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Deed of Trust, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

18.1 **Acceleration; Remedies.** Lender may terminate the Agreement and demand immediate payment in full of the entire balance owing under the Agreement and this Deed of Trust in a single lump sum payment if Borrower is in default due to the occurrence of any of the events of default specified in the Agreement. Lender may make such demand without making any further demand for payment. If Lender demands immediate payment in full, Lender may proceed to take all appropriate steps to collect amount owed to Lender, including, without limitation, exercising the power of sale or bringing a lawsuit to foreclose upon and sell the Property. In any lawsuit for foreclosure and sale, or in exercising the power of sale, Lender will have the right to collect, unless prohibited by law, all fees and charges incurred in the collection process, including reasonable attorneys' fees in accordance with applicable law.

If Lender exercises the power of sale, Lender shall file or cause to be filed in the office of the recorder of each county in which the Property is located a notice of default, identifying this Deed of Trust by stating the name of the Trustor and giving the book and page where the same is recorded (or other applicable recording information) or by giving a description of the Property, and containing a statement that a breach has occurred, setting forth the nature of the breach and Lender's election to exercise the power of sale and containing a statement required by law as to how Borrower might cure the default. Lender shall comply with all requirements of applicable law with respect to the recording, mailing, publication, or delivery of notices of default. Not less than three months after the notice of default is recorded, Lender shall cause a notice of sale to be posted, published, and recorded as required by applicable law,

which notice shall set forth the date of sale and shall contain other disclosures required by applicable law. The sale shall be conducted in a manner required by applicable law. Upon sale of the Property, the Trustee shall apply the proceeds of the sale in the following manner: first, to the costs and expenses of exercising the power of sale, including the payment of Trustee's fees and attorneys' fees as permitted by law, then to the payment of the obligation secured by this Deed of Trust; next, to satisfy obligations secured by junior liens in their order of priority; and finally, to the Borrower or the Borrower's successor in interest.

If Borrower defaults on any "material obligation", as that term is defined in the Agreement, Lender, in addition to pursuing such other remedies as may be permitted by law, this Deed of Trust, or the Agreement may exercise an option to prohibit Borrower from obtaining additional advances or to reduce Borrower's credit limit, as further described in the Agreement.

Notwithstanding any language in this Deed of Trust to the contrary, Lender shall provide Borrower with any grace period, right to cure, and/or reinstatement right required by this Deed of Trust, the Agreement, and/or applicable law. In addition, Lender shall provide notices of any grace periods, the right to cure, and/or reinstatements right as prescribed by applicable law.

Lender may exercise all of the rights and remedies provided by this Deed of Trust, the Agreement, or applicable law, and any of these rights and remedies may be exercised individually or jointly, one or more times.

Lender may waive or delay enforcing any or all of Lender's rights under the Agreement or this Deed of Trust or other documents at any time without limiting, restricting, or precluding Lender's exercise of any or all of Lender's rights in the future. All waivers must be in writing and signed by Lender and they shall apply only to the extent and with respect to the event specified in writing. No waiver of any right by Lender under the Agreement or this Deed of Trust shall affect the lien or priority of this Deed of Trust.

**18.2** **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the amounts secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by the Lender to enforce this Deed of Trust discontinued at any time prior to five business days before the date of sale, as disclosed in the notice of sale, of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all amounts which would then be due under this Deed of Trust and the Agreement had no acceleration occurred, (b) Borrower cures all breaches of any other covenants or agreements of Borrower set forth in this Deed of Trust; and (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust and in enforcing Lender's and Trustee's remedies as provided in paragraph 18 above including, but not limited to reasonable attorneys' fees as permitted by applicable law. Upon such payment and cure by the Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19.** **Release.** Upon your request and payment of all sums secured by this Deed of Trust, either the Trustee or we shall release this Deed of Trust and mark the Agreement "paid" and return the Agreement to you. We may charge the maximum amount permitted under applicable law for preparing and recording the reconveyance, including any recording fees.

**20.** **Substitute Trustee.** We, at our option, may from time to time remove the Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Deed of Trust and by applicable law.

**21.** **Possession of the Property.** You shall have possession of the Property until we have given you notice of default pursuant to paragraph 18 of this Deed of Trust.

Case: 16-53422    Doc# 25    Filed: 03/14/17    Entered: 03/14/17 13:06:03    Page 19 of 24

22. **Riders to this Deed of Trust.** If one or more riders are executed by you and recorded together with this Deed of Trust, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were part of this Deed of Trust.

____Adjustable Rate Rider    ____Graduated Payment Rider    ____Condominium Rider
____1-4 Family Rider    ____Planned Unit Development Ride
__X_Other(s) (specify)    RIDER TO THE DEED OF TRUST

23. **Payoff Requests.** If you request a payoff and/or demand statement we may charge you the maximum amount allowed by applicable law for providing such payoff and/or demand statement.

24. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale under this Deed of Trust be sent to the Borrower's address which is the Property address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924b of the Civil Code of California, as amended.

BY SIGNING BELOW, you accept and agree to the terms and covenants contained in this Deed of Trust and any rider(s) executed by you and recorded with it.

_____    Grantor
KENNETH ELLIOT DONAHUE

_____    Grantor
JOHNNIE MIRANDA DONAHUE

_____    Grantor

_____    Grantor

State of California             )
                                    ) ss

County of:   SANTA CRUZ     )

On 12|21|2005    before me, _Shelley Donahue_    personally appeared

KENNETH ELLIOT DONAHUE JOHNNIE MIRANDA DONAHUE

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.                           (Seal)
      (This area for official notarial seal)

SHELLEY DONAHUE
Comm. 1354334
NOTARY PUBLIC-CALIFORNIA
SANTA CRUZ COUNTY
MY COMMISSION EXPIRES APR 30 2006

Page 8 of 8

ALTA RESIDENTIAL LIMITED COVERAGE
JUNIOR LOAN POLICY (10/19/96)
EXPRESS TITLE POLICY

ORDER NO: ███████
REFERENCE NO: DONAHUE
ESCROW OFFICER: Donahue, Shelley
ESCROW NO: ███████

## EXHIBIT "A"

The land referred to in this policy is situated in the unincorporated area of the **County of SANTA CRUZ**, State of California, and described as follows:

LOT 88 AS SHOWN UPON THE MAP ENTITLED, "TRACT NO. 1414 SUNSET COVE", FILED FOR RECORD DECEMBER 23, 1999 IN VOLUME 97 OF MAPS, PAGE 19, RECORDS OF SANTA CRUZ COUNTY.

Page 2

1  Darren J. Devlin, Esq. [SBN 176261]
   THE LAW OFFICES OF JASON C. TATMAN, A.P.C.
2  5677 Oberlin Drive, Suite 210
   San Diego, CA 92121
3  Telephone: 760-512-1757
   Facsimile: 760-230-5876
4  dd@nationwidereconveyance.com
   Attorneys for Secured Creditor/Moving Party
5  First Tennessee Bank National Association
   successor thru merger with First Horizon
6  Home Loan Corporation

7              UNITED STATES BANKRUPTCY COURT

8         NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

9

10  In re:                                    Case No: 16-53422

11  JOHNNIE MIRANDA DONAHUE and               Chapter 13
    KENNETH ELLIOT DONAHUE,
12                                            DC No.: DJD-001

13          Debtors.                          **PROOF OF SERVICE**

14  _____          Date: April 5, 2017
                                              Time: 1:00 p.m.
15  First Tennessee Bank National Association  Ctrm: 3020
    successor thru merger with First Horizon
16  Home Loan Corporation,                    *The courtroom of the Honorable M. Elaine*
                                              *Hammond*
17          Movant,

18  -vs-

19  JOHNNIE MIRANDA DONAHUE and
    KENNETH ELLIOT DONAHUE, Debtors;
20  Devin Derham-Burk, Chapter 13 Trustee,

21          Respondents.

22

23

24          I, Darren J. Devlin, declare:  I am employed in the county of San Diego, California.  My

25  business address is 5677 Oberlin Drive, Suite 210, San Diego, CA  92121.  I am over the age of

26  eighteen and not a party to this action.

27

28

                                          1

On March 14, 2017, I served the Motion for Relief from Automatic Stay with supporting documents in said cause by placing a true and correct copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at Encinitas, California, addressed as follows:

The U.S. Trustee will be served by the Court via Notice of Electronic Filing ("NEF"), email, with corresponding hyperlink(s) to the documents via the PACER system. The transmission of the NEF shall constitute effective service in accordance with BLR 9013-3(c) and 9022-1(b). The U.S. Trustee is a registered participant in the Court's electronic filing system and has consented to electronic service.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on March 14, 2017, at Encinitas, California.

/s/Darren J. Devlin

Johnnie Miranda Donahue and Kenneth Elliot Donahue, 45 Vista Pointe Drive, Watsonville, CA 95076

Aaron Lipton, 7960 B Soquel Dr. #156, Aptos, CA 95003

Devin Derham-Burk, P.O. Box 50013, San Jose, CA 95150

Honorable M. Elaine Hammond, 280 South First Street, Room 3035, San Jose, CA 95113

2